# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2551 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Air Exchange vs. BIC Aircraft Leasing, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We deny BIC's motion to dismiss counts one and two [6-1] and grant Coast's motion to dismiss counts three and four [8-1].**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 2 6 2001 | |
| | Notified counsel by telephone. | date docketed | 20 |
| ✓ | Docketing to mail notices. | C.S. | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
FEB 26 2001

| | |
|---|---|
| AIR EXCHANGE,<br><br>      Plaintiff,<br><br>v.<br><br>BCI AIRCRAFT LEASING, ET AL.,<br><br>      Defendant. | Judge Wayne R. Andersen<br><br>Case No. 00 C 2551 |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Air Exchange ("plaintiff"), has sued BCI Aircraft Leasing, Inc. ("BCI") and Coast Business Credit ("Coast") in connection with business transaction involving the refinancing of two airplanes that BCI purchased. Both defendants have moved to dismiss the Complaint. For the reasons stated below, we deny BCI's motion and grant Coast's motion.

## Background

The facts are taken from the allegations in plaintiff's Complaint which we deem true for purposes of this motion. Plaintiff is in the business of providing brokerage and consultancy services in connection with the acquisition and disposition of aircraft through the sale, purchase, lease and/or financing of such aircraft. Plaintiff alleges that BCI purchased two airplanes on lease to an airline which leases were financed with a series of loans. BCI's intent was to obtain a cash payment to itself by discounting the excess cash flow from the leases. BCI engaged plaintiff in August 1999 as its agent authorized to arrange the desired discounting of the leases on the airplanes. In its original contract with Air Exchange, plaintiff identifed Coast as a prospective financier.

Plaintiff was unable to arrange the discounting that Air Exchange sought. During the time period that plaintiff investigated discounting opportunities on behalf of Air Exchange, Coast informed it that it might consider completely refinancing the leases on the airplanes instead of discounting the cash flow. Presumably as a result of this information, BCI entered into a second contract with plaintiff that again authorized plaintiff to act as BCI's exclusive agent charged with arranging refinancing with Coast.

The contract, which is attached to the Complaint is brief, but contains the following language at the heart of this motion and the parties' dispute:

> In the event Coast Business Credit Finances any amount related
> to the above-mentioned aircraft by January 31, 2000, BCI
> Aircraft Leasing further confirms that Air Exchange is entitled
> to a commission of 1.5% of the gross amount received by BCI
> or assigns, payable at closing from the proceeds.

According to the Complaint, in October of 1999, plaintiff and BCI were deep into negotiations about the proposed refinancing. However, plaintiff also advised BCI about other scenarios with different financiers. In November 1999, BCI told plaintiff that it was not in a position to make a decision regarding these other proposals and told it to direct its efforts towards closing the deal with Coast. During January 2000, plaintiff asserts that "it was informed" that BCI and Coast were continuing to negotiate the terms of the refinancing and it would be paid when the deal closed. (¶ 13). Significantly, plaintiff fails to identify how it was so informed and by whom.

When January came and went without a closing, plaintiff formally asked for an extension of the contract. In response, BCI's president allegedly assured plaintiff on numerous occasions that it would be paid its commission out of the proceeds of the refinancing. Plaintiff does not allege that it took any action on behalf of BCI after the January 2000. On approximately March 31, 2000,

2

plaintiff learned that BCI and Coast planned to close the refinancing transaction that date in an amount equal to $17,750,000. When plaintiff wrote BCI and requested its share of that amount (1.5%), BCI refused and, on April 3, 2000, it informed plaintiff that the contract between BCI and plaintiff had expired on January 31, 2000. Plaintiff alleges that these actions constitute a breach of contract (Count One). In the alternative, it alleges that it is entitled to recover its share of the refinancing proceeds under the doctrine of quantum meruit because BCI has been unjustly enriched (Count Two).

Counts Three and Four are directed at Coast. In Count Three, plaintiff alleges that Coast tortiously interfered with its contract with BCI. Plaintiff alleges that, "by virtue of having Air Exchange locate it through Air Exchange's brokering efforts, and Air Exchange's negotiations of the terms and conditions of the refinancing with CBC [Coast], was privy to and had actual knowledge of the contents of the CBC [Coast] agreement, specifically the brokerage fee of 1.5% that was to be paid out of the closing proceeds." (Complaint ¶ 22.) Because Coast continued the transaction anyway and then refused to pay plaintiff's commission, plaintiff alleges that Coast interfered with its contractual rights. Plaintiff requests both actual and punitive damages. Count Four alleges that Coast is a constructive trustee of plaintiff's proceeds as a result of BCI's fraud on it and requests the court to direct Coast to pay plaintiff what it is owed.

## Discussion

The first matter we must address in this diversity case is whether plaintiff has satisfied the statutorily prescribed jurisdictional amount in controversy. Section 1332 of Title 28, United States Code, requires that this amount exceed $75,000. Both defendants claim that the contract itself limits the total amount that plaintiff may recover to $36,462.11. They claim that the term "gross amount

3

received by BCI or assigns" is not 1.5% of the total amount of the loan proceeds paid to BCI, but the amount realized by BCI after it paid off debts to others, as well as after it calculated the costs and expenses it had. In other words, defendants argue that plaintiff's percentage of the "gross amount received by BCI" is not a percentage taken from the total amount of the loan proceeds, but the amount BCI netted after other payouts.

As plaintiff points out, defendants' challenge to the jurisdictional amount here requires plaintiff to provide proof to a "reasonable probability" that jurisdiction exists. Rexnard Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7ht Cir. 1995). In the court's view, plaintiff has done so here. First of all, the pertinent language of the contract more easily supports plaintiff's interpretation than defendants' version. The contract says nothing about deducting requisite payments to third parties from the proceeds paid to BCI. On the contrary, it refers to the "gross", and not net, amount of the proceeds. Plaintiff has presented evidence which supports its interpretation of the contract in the form of an affidavit from John Clevenger, its Director of Finance. Clevenger asserts that it was always his understanding that the fee would be based a percentage of the total loan. (We decline to strike this testimony as defendants urge us to do.) BCI's witness, Brian Hollanagel, asserts that this interpretation makes no sense because the commission that plaintiff would have earned under the original contract had the cash flow leases been successfully discounted, $72,924,21, is far less than the amount to which plaintiff claims it is entitled under the second contract. At the same time, BCI stood to gain less money by refinancing the airplanes than by discounting the leases.

BCI's argument sheds some doubt on plaintiff's interpretation of the contract, but not enough to dismiss on jurisdictional grounds at this early stage in the litigation. Indeed, the evidence before the court suggests that the contract may be ambiguous and susceptible to more than one

meaning or that the parties did not have a true meeting of the minds when they entered into the contract. We will not decide this question now on this scant record. We find only that the plaintiff has met its burden to show that there is a reasonable probability that the amount in controversy exceeds $75,000.

Defendant BCI next argues that plaintiff has failed to state a claim for breach of contract. Defendant prevails on this motion only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917, 921 (7th Cir. 1990)(quoting Conley v. Gibson, 78 S.Ct. 99, 101-102 (1957)). The Court assumes that all well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. Defendant contends that the terms of the contract plainly state that BCI's contractual relationship with plaintiff expired at the end of January and, therefore, it had no obligation to pay it anything for a transaction that closed in April. However, plaintiff clearly alleges that BCI orally waived compliance with this aspect of the contract many times and, as a result of this waiver, plaintiff continued to work on BCI's behalf to close the transaction with Coast. Such oral waivers are permissible under the law of the District of Columbia which the parties have stipulated governs the contract. Gagnon v. Wright, 200 A.2d 196, 198 (D.C. App. 1964); Sweeney v. Jacobsen, 103 F.Supp. 393, 396 (D.C. 1952). We find that the plaintiff has stated a claim for a breach of a contract which it further alleges was orally modified to extend the time for plaintiff's compliance with its terms.

In the event that there is a finding that a contract did not exist between the parties, plaintiff alternatively pleads a claim in quantum meruit, alleging that BCI was unjustly enriched by the benefits of the refinancing at the expense of plaintiff. BCI argues that an express contract existed

between the parties and that plaintiff has alleged, at best, an oral extension of that contract. Plaintiff argues that it merely is pleading two different causes of action in the alternative which clearly is permissible under the Federal Rules.

BCI cites Judge Zagel's well-reasoned opinion in <u>Conway Corp. v. Alpha Distributors, Ltd.</u>, 1992 WL 57950, 91 C 2762 (N.D. Ill. March 20, 1992) in support of its argument. In that case, the parties had entered into an express contract under which plaintiff agreed to effect the sale of defendant within six months. However, plaintiff was entitled to fees as long as the contact with the buyer (resulting in the sale) occurred within twelve months. Plaintiff identified a company that ultimately purchased defendant, but the closing did not take place until well after the twelve month period had expired. Plaintiff urged the court to recognize a "quasi-contract", or contract implied in fact, because plaintiff continued to act on behalf of plaintiff even after the six month period had expired (although admittedly more than twelve months expired prior to the closing.) The court found that a prerequisite for such an implied in fact contract is that an express agreement between the parties dealing with the same subject matter does not exist. <u>Id</u>. at *3. In so doing, the court relied on long-standing Illinois precedent which disallow contracts implied in law when an express contract exists. <u>Id.</u>, citing <u>Industrial Lift Truck v. Mitsubishi Int'l Corp.</u>, 60 Ill. Dec. 100, 103 (Ill. App. 1st Dis. 1982).

We are hard pressed to distinguish that case from the one before us. Plaintiff's theory is not that a express contract did not exist between the parties, but rather that the express contract was modified to extend its time for performance. Should the court or jury find that the contract was not so extended, the original contract terms would continue to govern the transaction. As BCI points out, all of plaintiff's cited authorities which permit pleading contract and quantum meruit in the

6

alternative rest on the facts that suggest that the express contract between the parties may not legally exist, or that plaintiff continued to perform services for defendant after the contract expired (January 2000), neither of which plaintiff alleges here.

This being said, we nonetheless refuse to grant BCI's motion to dismiss. As we have noted above, the parties disagree on a core element of their contract—the amount of compensation owed to plaintiff if it performed its contractual duties. Thus, it is entirely possible that, at a later stage of the case, the court may rule that there was no true meeting of the minds on this critical contractual term and, therefore, no express contract indeed exists between them. "Although the parties may have had and manifested the intent to make a contract, if the content of their agreement is unduly uncertain and indefinite no contract is formed." Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 27 (1991), citing 1 Williston, Contracts § 37; 1 Corbin, Contracts §95. If that turns out to be the case, it is conceivable that plaintiff might be compensated for the fair market value of its services to BCI on a quasi-contract basis. Therefore, although plaintiff did not advance this argument in response to the motion to dismiss, we will allow Count Two to stand for now.

Count Three is directed at Coast. Plaintiff charges that Coast tortiously interfered with its contract with BCI and, therefore, is liable to it for the resulting damages. Coast responds that plaintiff has failed to allege the elements of such a claim. We agree. A claim for tortious interference requires plaintiff to plead "(1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) a subsequent breach by the third party resulting from defendant's wrongful conduct; and (5) damages suffered by plaintiff as a result of that breach." Strosberg v. Brauvin Realty Services, Inc., 295 Ill. App. 17, 32, 691 N.E.2d 834,

7

845 (1st Dist. 1998)(citations omitted). Coast argues that plaintiff has failed to plead that it had knowledge that BCI and plaintiff had orally agreed to extend their agreement past the contract date. We agree. The most that can be inferred from the plaintiff's Complaint is that Coast was aware of plaintiff's original agreement with BCI, certainly not that it knew of the extension. Plaintiff argues in its memorandum in opposition to Coast's motion that Coast must have known about the extension and cites the Clevenger affidavit in support of its position. The fact remains, however, that none of these allegations are in the Complaint nor can they be reasonably inferred from the stated allegations even under the liberal notice provisions of Federal Rule of Civil Procedure 8(a). In addition, as Coast points out, all of the allegations of wrongful conduct (i.e. refusing to communicate with plaintiff; refusing to pay the commission) are directed at BCI, not Coast. Finally, the Complaint in its current form does not contain any facts that support a claim that Coast did anything to induce the breach. We, therefore, dismiss Count Three.

Finally, we also dismiss Count Four, plaintiff's claim for a constructive trust asserted against Coast. We agree with plaintiff that the equitable remedy of a constructive trust may be ordered to compel one who unfairly holds properly to whom it justly belongs. People ex. rel Hartigan v. Candy Club, 149 Ill. App. 3d 498, 501 NE.2d 188, 191 (1st Dist. 1986). The defect in plaintiff's claim is that it has pleaded no facts which support its assertion that Coast unfairly holds funds to which plaintiff is entitled. The most that can fairly be read from plaintiff's Complaint that Coast knew of the original contract, should have known that BCI had extended it and, therefore should have compelled BCI to honor its contract by refusing to disburse the proceeds of the refinancing to BCI. Again, Coast itself is not directly accused of any wrongdoing. Further, plaintiff does not identify

a fund in Coast's possession to which a constructive trust may attach. We, therefore, also dismiss Count Four.

### Conclusion

For all of reasons stated above, we deny BCI's motion to dismiss Counts One and two and grant Coast's motion to dismiss Counts Three and Four.

                                       Wayne R. Andersen
                                       United States District Judge

Dated: February 22, 2001